1  QUINN EMANUEL URQUHART & SULLIVAN LLP
   Kevin P.B. Johnson (Bar No. 177129)
2  kevinjohnson@quinnemanuel.com
   Brett Arnold (Bar No. 266740)
3  brettarnold@quinnemanuel.com
   Margaret Shyr (Bar No. 300253)
4  margaretshyr@quinnemanuel.com
   555 Twin Dolphin Drive, 5th Floor
5  Redwood Shores, California 94065-2139
   Telephone:     (650) 801-5000
6  Facsimile:     (650) 801-5100

7  Joseph Milowic III (*admitted pro hac vice*)
   josephmilowic@quinnemanuel.com
8  51 Madison Ave., 22nd Floor
   New York, NY 10010
9  Telephone:    (212) 849-7000
   Facsimile:    (212) 849-7100

10
   Attorneys for Juicero Inc.
11
                    UNITED STATES DISTRICT COURT
12
                   NORTHERN DISTRICT OF CALIFORNIA
13
                         SAN JOSE DIVISION
14

15 | JUICERO INC., a Delaware corporation, | CASE NO.  5:17-cv-01921-BLF |

   Plaintiff,

16                                          **JUICERO INC.'S REPLY IN SUPPORT
                                            OF ITS MOTION FOR PRELIMINARY
   vs.                                      INJUNCTION**
17
   iTASTE CO., LTD., a/k/a iTaste Co., Ltd.
18 Shanghai, China and Shanghai iTaste      **Hearing:**
   Electronics Technology Co., Ltd., d/b/a Juisir;
19 FROOTHIE USA LLC, a Delaware             Date:      October 12, 2017
   limited liability company; and           Time:      9:00 a.m.
20 XIUXING "LEO" CHEN, an individual,       Place:     Courtroom 3, 5th Floor
                                            Judge:     Hon. Beth Labson Freeman
21                Defendants.

22

23              **REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT ........................................................................................................................1

I.     ALL FOUR EQUITABLE FACTORS FAVOR A PRELIMINARY INJUNCTION ..........1

    A.     Juicero Is Likely To Succeed On The Merits.....................................................1

        i.     Defendants Fail To Rebut That They Infringe The '298 Patent....................1

        ii.     Defendants Have Not Raised A Substantial Question As To Validity .........3

    B.     An Injunction Is Necessary To Prevent Irreparable Harm .........................................5

        i.     Juicero Provided Abundant Evidence Of Likely Harm ...............................5

        ii.     Juicero Provided Abundant Evidence Of A Causal Nexus ...........................7

    C.     The Balance Of Equities Favors An Injunction .......................................................9

    D.     The Public Interest Favors An Injunction ..........................................................10

II.     JUICERO'S ALTERNATIVE PROPOSED ORDER .......................................................10

CONCLUSION ...................................................................................................................10

1

## **TABLE OF AUTHORITIES**

2

**Page**

CASES

3

*Advanced Cardiovascular Sys., Inc. v. Medtronic Vascular, Inc.,*
    579 F. Supp. 2d 554 (D. Del. 2008) ................................................................... 10

4

5

*Apple Inc. v. Samsung Elecs. Co.,*
    735 F.3d 1352 (Fed. Cir. 2013) ........................................................................... 8

6

*Apple Inc. v. Samsung Elecs. Co.,*
    809 F.3d 633 (Fed. Cir. 2015) ............................................................................ 7

7

8

*Apple, Inc. v. Samsung Elecs. Co.,*
    No. 11-cv-01846-LHK, 2012 WL 2401680 (N.D. Cal. June 26, 2012) ........................ 9, 10

9

*Balsam Brands Inc. v. Cinmar, LLC,*
    No. 15-cv-04829-WHO, 2015 WL 7015417 (N.D. Cal. Nov. 12, 2015) ........................ 6, 7

10

11

*Canon Computer Sys, Inc. v. Nu-Kote Intern., Inc.,*
    134 F.3d 1085 (Fed. Cir. 1998) ........................................................................... 4

12

*Centricut, LLC v. Esab Grp., Inc.,*
    390 F.3d 1361 (Fed. Cir. 2004) ........................................................................... 3

13

14

*Cordis Corp. v. Boston Scientific Corp.,*
    99 F. App'x 928 (Fed. Cir. 2004) ........................................................................ 10

15

*Crown Operations Int'l, Ltd. v. Solutia Inc.,*
    289 F.3d 1367 (Fed. Cir. 2002) ........................................................................... 2

16

17

*D Now, Inc. v. TPF Toys Ltd.,*
    No. 16-cv-3792-NC, Dkt. No. 51 (N.D. Cal. Nov. 23, 2016) ...................................... 5

18

*Douglas Dynamics, LLC v. Buyers Prod. Co.,*
    717 F.3d 1336 (Fed. Cir. 2013) ........................................................................... 7

19

20

*GuideTech, Inc. v. Brilliant Instruments, Inc.,*
    No. 09-cv-5517-CW, 2014 WL 4182340 (N.D. Cal. Aug. 22, 2014) ............................ 5

21

*Hologic, Inc. v. Senorx, Inc.,*
    No. 08-cv-00133-RMW, 2008 WL 1860035 (N.D. Cal. Apr. 25, 2008) ......................... 2

22

23

*Metalcraft of Mayville, Inc. v. The Toro Co.,*
    848 F.3d 1358 (Fed. Cir. 2017) ......................................................................... 4, 10

24

*Microsoft Corp. v. i4i Ltd. P'ship,*
    564 U.S. 91 (2011) ......................................................................................... 4

25

26

*Nutrition 21 v. United States,*
    930 F.2d 867 (Fed. Cir. 1991) ........................................................................... 5

27

*Open Text, S.A. v. Box, Inc.,*
    36 F. Supp.3d 885 (N.D. Cal. 2014) ..................................................................... 6

28

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ........................................................................... 2

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    No. 09-cv-5235-MMC, 2015 WL 604582 (N.D. Cal. Feb. 12, 2015) ....................... 7

*PPG Indus., Inc. v. Guardian Indus. Corp.*,
    75 F.3d 1558 (Fed. Cir. 1996) ........................................................................... 4

*Sofamor Danek Grp., Inc. v. DePuy-Motech, Inc.*,
    74 F.3d 1216 (Fed. Cir. 1996) ........................................................................... 1

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
    655 F.3d 1375 (Fed. Cir. 2011) ......................................................................... 5

*T&E Inv. Grp., LLC v. Faulkner*,
    No. 3:11-CV-0724-P, 2012 WL 12822296 (N.D. Tex. Sept. 27, 2012) ..................... 3

*Univ. of Utah Research Found. v. Ambry Genetics Corp.*,
    3 F. Supp. 3d 1213 (D. Utah 2014) ..................................................................... 7

*Wavetronix LLC v. Iteris, Inc.*,
    No. A-14-CA-970-SS, 2015 WL 300726 (W.D. Tex. Jan. 22, 2015) ......................... 7

## RULES

Fed. R. Civ. P. 65(b)(2) .......................................................................................... 7

Fed. R. Civ. P. 65(d)(2) .......................................................................................... 7

Fed. R. Civ. P. 65(d)(1)(C) ................................................................................... 10

## ADDITIONAL AUTHORITIES

84 A.L.R.2d 12 ..................................................................................................... 9

Cambridge English Dictionary ............................................................................... 1

Merriam-Webster Dictionary ................................................................................. 2

Restatement (Second) of Contracts § 264 ............................................................. 9

## INTRODUCTION

Defendants nowhere contest that they are importing, marketing, and selling the accused Juisir or that it was designed to copy Juicero's product. Nor do Defendants contest that they infringe the '298 patent when its language is given its plain meaning. Instead, they propose artificial claim constructions and attack validity with references that the USPTO already considered when it found the '298 patent novel and non-obvious. The rest of Defendants' opposition relies on derogatory attacks against Juicero, but invective is no substitute for authority condoning what Defendants are doing. That Juicero may have (unduly) received negative treatment from a press article does not mean Defendants can continue their misconduct with impunity. Instead, it shows that without Court intervention, Juicero is at risk of additional harm from Defendants. That likely irreparable harm, in the form of lost market share, lost downstream sales, harm to reputation, and more, were abundantly shown and connected to Defendants' actions.

## ARGUMENT

## I.   ALL FOUR EQUITABLE FACTORS FAVOR A PRELIMINARY INJUNCTION

That a preliminary injunction is a powerful or "drastic" remedy does not mean it must be granted only in "exceedingly rare" instances. (Froothie Opp. at 9.) There is no quota. Instead, courts apply the four-part test on a case-by-case basis, and in situations like this where all the factors weigh in its favor, the plaintiff is "*entitled* to a preliminary injunction." *Sofamor Danek Grp., Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1219 (Fed. Cir. 1996) (emphasis added).

### A.   Juicero Is Likely To Succeed On The Merits

#### i.   Defendants Fail To Rebut That They Infringe The '298 Patent

1. Defendants nowhere contest that they infringe if the '298 patent is given its plain meaning. They instead seek to narrow two terms, but neither attempt is faithful to the evidence. First, the term "juicer cartridge" is not limited to "a sealed, rigid yet compressible container." (Froothie Opp. at 5-7, 17.) The plain meaning of a "cartridge" is simply "a container that is used in a larger piece of equipment, and which can be replaced with another similar part." Cambridge English Dictionary, http://dictionary.cambridge.org/us/dictionary/english/cartridge. And while the patent describes a rigid cartridge in some embodiments, it also includes those that are "*flexible*" or

1  "*compressible instead of rigid*."  (Milowic Ex. 10 at 22:10-11, 18-29 (emphasis added).)  "[A]

2  juicer cartridge may [even] be a single *pouch*," or "a liquid permeable *pouch* at least partially

3  contained within a liquid impermeable *pouch*." (*Id.* at 7:14-18; 27:37-40 (emphasis added).)  The

4  latter is exactly what the Juisir appears to use.  (*See, e.g.*, Milowic Ex. 20 at 10, 13; Ex. 29 at 1-2.)

5         There is also no requirement that the cartridge be sealed.  The patent says only that "[i]n

6  *some* instances" and "in *some* embodiments, an outlet of a juicer cartridge *may* be sealed …."

7  (Milowic Ex. 10 at 7:59-63 (emphasis added).)  Defendants even admit that asserted Claim 3 lacks

8  any mention of a seal, unlike Claim 1.  (Froothie Opp. at 8.)  And merely because a provisional

9  application includes a sealed cartridge (*id.*) does not require it in later applications.  *See, e.g.*,

10 *Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1376 (Fed. Cir. 2002).

11        Second, Defendants are wrong to limit a "dispensing point" to one that "requires a housing

12 nook or opening *closely tailored to the shape of* and in *direct contact with* the cartridge and its

13 outlet."  (Froothie Opp. at 18 (emphasis added).)  Defendants rely solely on their own construal of

14 two images for this.  (*Id.* at 8.)  The patent, however, says that its figures are "nonlimiting

15 embodiments" (Milowic Ex. 10 at 12:54-55), and describes the "dispensing point" merely as an

16 "outlet" in the juicer that allows the "outlet" of the cartridge to pass through, (*e.g.*, *id.* at 13:4-6,

17 39-42).  An outlet is simply "a place or opening through which something is let out."  Merriam-

18 Webster    Dictionary,    https://www.merriam-webster.com/dictionary/outlet?utm_campaign=sd

19 &utm_medium=serp&utm_source=jsonld.  No limitations to that definition are warranted.

20        2.  The declaration of Juicero's Paul Katz is sound.  Unlike the declarant in *Hologic, Inc. v.*

21 *Senorx, Inc.*, No. 08-cv-0133-RMW, 2008 WL 1860035, at *15-16 (N.D. Cal. Apr. 25, 2008),

22 who had no personal knowledge of whether the product at issue practiced the patent, Mr. Katz is

23 one of the *inventors* of the '298 patent and the Juicero Press.  (Katz Decl. ¶ 2; *see also Phillips v.*

24 *AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (inventor testimony is a main form of extrinsic

25 evidence courts can rely on).)  Juicero also did not offer the testimony of Mr. Katz "in an attempt

26 to draw inappropriate comparisons."  (Froothie Opp. at 16.)  Instead, Juicero's infringement

27 analysis compared the Juisir directly to Claim 3 of the patent.  (Motion ("Mot.") at 13-16.)

28        3.  Juicero's infringement analysis is not based on attorney argument, unlike *T&E Inv.*

*Grp., LLC v. Faulkner*, No. 3:11-cv-0724, 2012 WL 12822296 (N.D. Tex. Sept. 27, 2012), where "no evidence was presented or cited in Plaintiffs' motion" involving a trademark infringement claim. *Id.* at *2. Here, Juicero presented abundant evidence, including the patent itself, images and video of the accused Juisir, Defendants' marketing materials, and Defendants' own admissions of how the Juisir works, including from their pleadings. (Mot. at 13-16.)

4.   Defendants are wrong that the "two requirements for establishing infringement" are "claim construction and *expert evidence* … mapping the construed claims to the accused device." (Froothie Opp. at 17 (emphasis added).) Even for infringement claims at the merits stage, "[i]n many patent cases expert testimony will not be necessary because the technology will be easily understandable without the need for expert explanatory testimony." *Centricut, LLC v. Esab Grp., Inc.*, 390 F.3d 1361, 1369 (Fed. Cir. 2004) (quotation marks omitted).

## ii.   Defendants Have Not Raised A Substantial Question As To Validity

1.   Defendants argue that if the '298 patent covers the Juisir, then it would be nothing more than an obvious combination of old art. (Froothie Opp. at 18.) Yet Defendants' own advertising betrays them. They tout the Juisir as an "***innovative*** cold press juicer" and "the ***ultimate solution***," even calling it the world's "***first*** cold-press juicer juicing without cleaning." (Milowic Reply Exs. 38, 39 (emphasis added).) Thus, the very features Defendants tout in the marketplace as innovative and unique are those they would now have the Court believe are just the opposite.

2.   Not only do Defendants violate the page limit by attaching a 60-page claim chart containing attorney commentary, all of the prior art cited in it was either before the Patent Office or is cumulative of art before the Office. The Examiner considered both Shephard (disclosing a press and juice container where extracted juice empties onto the lower portion of the press formed as a drainage tray, ***therefore requiring cleaning of the press***) (Hadden Dec., Ex. 38, Fig. 1, 4:37-44; 8:28-37) and Wettlaufer (disclosing an inflatable bladder press that directly contacts a porous pouch of fruit forcing extracted juice and pulp through course metal filters, ***requiring cleaning of the press***) (*id.*, Ex. 39, Fig. 1, 4:1-23). Johnson is cumulative of Shephard and Wettlaufer: its press also directly contacts the fruit. (*Id.*, Ex. 36, Fig. 1; 3:33–63; 5:4-24.) Huber, Carroll, and Rasmussen (directed respectively to lemon juice squeezers and a compressible fruit container) are

1    also cumulative of art before the Examiner.  For example, U.S. Pat. Nos. 1,676,102, 2,688,914,

2    3,159,096, and 3,334,790 disclose juice squeezers with outlets, and U.S. Pub. 2013/0126370

3    discloses a compressible food container with a spout (Para. 57, Figs 30-33), all of which were

4    considered by the Examiner who listed them on the face of the patent.  (Milowic Reply Exs. 41-

5    45.)  Juicero's '298 patent thus maintains its presumption of validity over Defendants' references.

6        Further, "it is not enough for [Defendants] to merely demonstrate that elements of the

7    claimed invention were independently known in the prior art" without evidence that "one of skill

8    in the art would have combined these particular references to produce the claimed invention."

9    *Metalcraft v. Toro,* 848 F.3d 1358, 1367 (Fed. Cir. 2017).  "Often, every element of a claimed

10   invention can be found in the prior art," but the law does not "allow hindsight bias to be the thread

11   that stitches together prior art patches into something that is the claimed invention."  *Id.*

12   Defendants' attorney is not one of skill in the art so his hindsight conjecture is no indication that

13   Defendants will likely be able to prove with clear and convincing evidence that it would have been

14   obvious to combine, for example, a squeezable container with a press like Shephard or Johnson

15   that was designed with an integral drainage tray or funnel to guide juice flowing out of produce.

16   Defendants at most show only that Juicero created a solution out of building blocks that had

17   supposedly been around for a hundred years, proving just how *non*-obvious their solution was.

18       3.   Juicero's statement of the law is not "misleading."  (Froothie Opp. at 18.)  A patent's

19   presumption of validity "exists at every stage of the litigation," including the preliminary

20   injunction stage.  *Canon Computer Sys, Inc. v. Nu-Kote Intern., Inc.*, 134 F.3d 1085, 1088 (Fed.

21   Cir. 1998).  Thus, whether a challenger has raised a "substantial question" regarding validity

22   depends on "whether the challenger's evidence of invalidity is sufficiently persuasive that it is

23   likely to overcome the presumption of patent validity" at trial where the clear and convincing

24   standard is applied.  *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1566 (Fed. Cir.

25   1996).  And the presumption of validity is strongest when the challenger relies on art that the PTO

26   already considered.  *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 111 (2011).

27       4.   In its opening brief, Juicero identified numerous secondary considerations of

28   nonobviousness that stand unrebutted.  For example, Defendants do not dispute that they copied

the Juicero, that the Juicero is a commercial success, or that the industry recognized it as the first cold-press juicer requiring no cleaning.  (Mot. at 16-18.)   And the connection between the accolades and the patent is clear:  the claimed juicer is designed to dispense juice "without the extracted fluid or food matter directly contacting the region or pressing element."  (Milowic Ex. 10 at 2:16-19.)  In Defendants' own words, that technology creates the "[w]orld's most effortless juicer, no cleaning required" — "No pulling the machine apart.  No rinsing.  Just juice." (Milowic Ex. 21 at 1, 2.)   Secondary considerations like these may be the most "probative and cogent evidence [of nonobviousness] in the record" because they avoid the trap of hindsight.  *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1375, 1364 (Fed. Cir. 2011).

**B.     An Injunction Is Necessary To Prevent Irreparable Harm**

**i.     Juicero Provided Abundant Evidence Of Likely Harm**

1.  As with their non-infringement argument, Defendants assert that Juicero relied "entirely on attorney argument" to establish irreparable harm.  (Froothie Opp. at 10.)  But again Defendants have to ignore dozens of exhibits and several fact declarations to make that claim, rendering their cases inapt.  In *Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991), the plaintiff sought unsuccessfully to invoke the now-obsolete rule that irreparable harm could be presumed without any evidentiary support if the plaintiff made "a clear showing of validity and infringement."  In *GuideTech, Inc. v. Brilliant Instruments, Inc.*, No. 09-cv-5517-CW, 2014 WL 4182340, at *7 (N.D. Cal. Aug. 22, 2014), the Court rejected a claim of potential lost future sales because the only evidence in the record was that the defendant was "no longer selling the infringing products," unlike here.  And in *D Now, Inc. v. TPF Toys Ltd.*, No. 16-cv-3792-NC, Dkt. No. 51 (N.D. Cal. Nov. 23, 2016), the plaintiff alleged that it was "*currently* suffering a loss" of both sales and goodwill, but offered no evidence that either was actually happening.  *Id.* at 2 (emphasis added).   In contrast, Juicero provided substantial evidence of the harms it is already suffering and those it is likely to suffer if Defendants are not enjoined.  (Mot. at 18-23.)

2.  Defendants assert they cannot harm Juicero because they do not compete with it. (Froothie Opp. at 10-11.)  But Defendants' actions contradict their words.  As Juicero already showed, iTaste and Chen began their business by copying Juicero's webpage, down to the tagline.

1  (Mot. at 8.)  Froothie likewise ran paid ads when internet users searched for the term JUICERO,

2  even displaying the slogan "Don't buy the JUICERO" in an effort to steal away potential

3  customers.  (*Id*. at 19.)  Defendants' only response is that Juicero offered no evidence that the

4  competitive ads actually worked (Froothie Opp. at 12), but Juicero has no way to access that

5  information prior to discovery and Froothie nowhere denies that they did.

6       Defendants also fail to deny that after the misguided Bloomberg article came out they

7  sought to attract potential Juicero customers by posting notes on their websites disparaging Juicero

8  and going on record with a friendly Forbes reporter where Chen made false and harmful

9  statements about Juicero's products.  (Mot. at 25.)  Consumers confirmed that Defendants'

10  competitive tactics had an impact in purchasing decisions.  (*Id.*)

11       3.    While "[t]he mere 'possibility' of irreparable harm is not enough to justify a

12  preliminary injunction," *Balsam Brands Inc. v. Cinmar, LLC*, No. 15-cv-04829-WHO, 2015 WL

13  7015417 at *9 (N.D. Cal. Nov. 12, 2015), Juicero need only prove that "there is a ***likelihood*** of

14  irreparable injury," *id.* at *2 (emphasis added), not that irreparable harm has already started.  To

15  that end, Defendants fail to address Juicero's evidence that loss of market share and downstream

16  sales are likely to happen here given the small market for countertop cold-press juicers.  (Mot. 19-

17  21, 23.)  This case is unlike *Open Text, S.A. v. Box, Inc.*, 36 F.Supp.3d 885 (N.D. Cal. 2014),

18  where the "relevant market [was] filled with as many as twenty-six competitors." *Id.* at 906.

19       4.    There is also no basis to disregard the declaration of Juicero's CFO describing

20  threatened harms.  (Froothie Opp. at 12, 15.)  In *Balsam Brands*, 2015 WL 7015417, the court did

21  not rule that a declaration from a company's officer is somehow categorically incompetent

22  evidence.  Instead, the court considered the declaration and found that because it related to lost

23  sales from alleged *patent infringement*, it could not support a temporary restraining order based on

24  *illegal advertising*.  *Id.* at *10.  Defendants also tellingly rely on declarations from their *own* CFO

25  and Operations Manager in an attempt to establish harm.  (Dkt. 44-2; Dkt. 56-1.)

26       5. Defendants are wrong that there can only be reputational harm if there is evidence in the

27  record that "the alleged infringer's product was an inferior and less prestigious knock-off of the

28  patentee's product."  (Froothie Opp. at 13.)  Juicero is not claiming reputational harm from the

1   Juisir's being an inferior product, as in *Univ. of Utah Research Found. v. Ambry Genetics Corp.*, 3

2   F. Supp. 3d 1213 (D. Utah 2014), or solely on the basis that it is an innovative company, as in

3   *Wavetronix LLC v. Iteris, Inc.*, No. A-14-CA-970-SS, 2015 WL 300726, at *7-8 (W.D. Tex. Jan.

4   22, 2015), but due to Defendants' wrongfully receiving praise for specific innovations that Juicero

5   created (*see* Mot. at 22-23), of which there *is* "evidence in the record" (*contra* Froothie Opp. at

6   13).   Defendants also mistakenly rely on the *permanent* injunction standard where the plaintiff

7   must show that "it *has* suffered an irreparable injury."   *Douglas Dynamics, LLC v. Buyers Prod.*

8   *Co.*, 717 F.3d 1336, 1344 (Fed. Cir. 2013) (emphasis added); *Power Integrations, Inc. v. Fairchild*

9   *Semiconductor Int'l, Inc.*, No. 09-cv-5235-MMC, 2015 WL 604582, at *5 (N.D. Cal. Feb. 12,

10   2015).   Preliminary injunctions are meant to stop such harm before it begins.   (Mot. at 11.)

11         6.   Juicero has acted in a timely manner.   At the time it filed suit on April 6, 2017, iTaste

12   and Chen were stating that they would begin shipping their product in May.   (Milowic Ex. 36 at

13   3.)   Defendants then amended their projected shipping date to June-July.   (*Id.*)   Defendants even

14   concede ███████████████████ (Liu Dec. ¶ 7), showing their timing argument is illusory.

15         Juicero's preliminary injunction motion was timely filed on May 19, 2017.   (Dkt. 35.)   Any

16   undue delay in its filing is a product of Defendants' own making.   iTaste and Chen claim that

17   Juicero could have sought an *ex parte* TRO (iTaste/Chen Opp. at 2), but that relief is limited to

18   several weeks and is only enforceable against parties with notice of the order.   Fed. R. Civ. P.

19   65(b)(2), (d)(2).   As the Court is aware, the China-based defendants refused to accept service in

20   this action until Juicero moved the Court to intervene.   (Dkt. 41.)   Prior to that time, Froothie's

21   attorneys even refused to give Juicero a straight answer about whether or not they also represented

22   the China-based defendants, which they clearly do.   (Milowic Reply Dec. ¶¶ 5-6, Ex. 40.)   Any

23   negative consequences from these delay tactics should not be placed on Juicero.

24         **ii.   Juicero Provided Abundant Evidence Of A Causal Nexus**

25         1.   Defendants assert that a "strong causal nexus" must be shown, such that the patented

26   feature is "the *sole* driver of demand for the Juisir."   (Froothie Opp. 1, 14, 15 (emphasis added).)

27   It is error, however, to "require[] [Juicero] to prove that the infringing features were the ***exclusive***

28   ***or predominant*** reason why consumers bought [Defendant's] products."   *Apple Inc. v. Samsung*

1     *Elecs. Co.*, 809 F.3d 633, 642 (Fed. Cir. 2015) (emphasis added).   Only "'***some connection***'

2     between the patented feature[] and demand for the infringing product[]" need be shown.  *Apple*

3     *Inc. v. Samsung Elecs. Co*., 735 F.3d 1352, 1364 (Fed. Cir. 2013) (emphasis added).

4        Relying on their faulty legal premise, Defendants fail to rebut that there is at least some

5     connection between consumer demand for the Juisir and the accused features.  (Mot. at 21-23.)  It

6     is irrelevant that some consumers might also want the Juisir for other reasons.  (Froothie Opp. at

7     14-15.)[1]  Nor is it an excuse that Juisir users are able to use their own produce.  (*Id.* at 14.)  The

8     '298 patent says that while "in some instances it may be desirable to provide pre-packaged juicer

9     cartridges," in others "a consumer might fill a juicer cartridge with a food matter for use in a juicer

10    system."  (Milowic Ex. 10 at 31:43-45.)  The '298 patent was issued to Juicero to give it a limited

11    period of exclusivity in which it, and it *alone*, is allowed to determine how best to offer its

12    technology in the marketplace.  Indeed, that the Juisir can accommodate either option is simply

13    further proof that it infringes.  (Milowic Ex. 29 at 1-2.)

14       2.  Juicero is not claiming a patent on all ways of providing "high quality juice at high

15    yields with no cleaning."  (Froothie Opp. at 14.)  Instead, Juicero claims a particular way of doing

16    so, which Defendants never deny that they copied and which is undeniably creating demand for

17    their infringing product.  Indeed, Defendants offer no response to the evidence that (i) consumers

18    are ordering the Juisir for the benefits enabled by Juicero's patented technology, (ii) Defendants

19    tout these benefits as the top three reasons for buying the Juisir, and (iii) press articles have praised

20    the infringing Juisir for providing these benefits.  (Mot. at 21-22; Milowic Reply Dec. Ex. 38.)

21       3.  Finally, Defendants cannot hide the harm they will likely cause by pointing to crass and

22    even vulgar internet posts by individuals with excessively negative opinions of Bay Area

23    companies.  (Froothie Opp. at 2, 4.)  As Juicero showed before and Defendants failed to rebut, the

---

24        [1]   Defendants are wrong to draw a distinction between the recyclability of the parties'

25    juicer packs.  Both use a form of plastic.  (Milowic Ex. 20 at 10.)  Unlike Juicero, which provides recycling options such as at local grocery stores, iTaste tells its users to "simply dispose" of its

26    packs.  (*Id.*)  Only the inner cotton lining in the Juisir packs is biodegradable.  (*Id.* at 13.)

27        And a Juicero Produce Pack subscription can certainly be cancelled.   (*See* https://help.juicero.com/hc/en-us/articles/228297348-How-do-I-pause-my-subscription-   ("This

28    will ***cancel*** all future deliveries and charges.") (emphasis added).  The "pause" terminology simply refers to the consumer's ability to "start [the] subscription again at any time" if desired.

1   misguided Bloomberg article and follow-on comments only serve to highlight how important it is

2   for the Court to protect Juicero and its exclusionary rights at this time.  (Mot. at 19-20.)

3   **C.      The Balance Of Equities Favors An Injunction**

4   1.  Defendants are wrong that there must first be a finding of infringement on the merits

5   before a court can ignore the harm to a business built on an infringing product.  (Froothie Opp. at

6   23.)  In *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846-LHK, 2012 WL 2401680 (N.D. Cal.

7   June 26, 2012), for example, the court at the preliminary injunction stage found infringement

8   likely and applied that principle, ruling that the defendant "cannot be heard to complain about

9   broken business relationships that it has established on infringing products."  *Id.* at *3.

10  Defendants try to distinguish Juicero's other supporting cases by pointing out facts unique to them

11  (Froothie Opp. at 23), but offer no explanation why those specific facts must be present here

12  before the Court can apply a general principle of equity.  If anything, Defendants' failure to

13  approach Juicero about licensing its technology weighs *in favor* of an injunction, as Defendants

14  have proved that nothing short of Court intervention will stop their actions.

15  2.  Defendants do not contest that they face less harm from an injunction now, ██████

16  █████████████, compared to one after they have established a greater foothold in the

17  market.  (Mot. at 24 (collecting cases).)

18  3.  Defendants' financials also do not tip the scales.  Froothie's expenditures to date

19  ████████████████████ are minimal in comparison to the harm they threaten.  (Froothie

20  Opp. at 23.)  The heart of Froothie's argument is that ████████████████████████

21  ████████████████████████████████████████████████████████████

22  ████  But hornbook law says that "if supervening governmental action prohibits a performance

23  or imposes requirements that make it impracticable, the duty to render that performance is

24  discharged."  Restatement (Second) of Contracts § 264, comment a (1981); *see also* 84 A.L.R.2d

25  12 (collecting cases "in which a court order or injunction was deemed to render performance of

26  the contract legally impossible and to thereby excuse nonperformance by the promisor").

27  Defendants' also make no argument that their anticipated lost sales (Froothie Opp. at 23;

28  iTaste/Chen Opp. at 2-3) cannot be secured by a bond.  And even where a defendant's lost sales

1  are "certain[]," the balance still favors an injunction where the plaintiff would have to "directly

2  compete with [defendant's] infringing products." *Apple*, 2012 WL 2401680, at *3.

3          **D.      The Public Interest Favors An Injunction**

4          Defendants fail to show that a "critical public interest would be injured" if an injunction

5  issued. *Metalcraft of Mayville*, 848 F.3d at 1369.  Consumers will still have access to the Juicero

6  Press.   And although other counter-top juicers may not provide all the same benefits and

7  conveniences as Juicero, consumers will still have access to other sources of cold-pressed juice as

8  well as raw produce.  Defendants' cited cases, in contrast, dealt with coronary stents that courts

9  found "would injure the public health" if removed from the market.  *Cordis Corp. v. Boston*

10  *Scientific Corp.*, 99 F. App'x 928, 935 (Fed. Cir. 2004); *Advanced Cardiovascular Sys., Inc. v.*

11  *Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554, 561 (D. Del. 2008).

12  **II.      JUICERO'S ALTERNATIVE PROPOSED ORDER**

13          Juicero's proposed order clearly "describe[s] in reasonable detail … the act or acts

14  restrained or required." Fed. R. Civ. P. 65(d)(1)(C).  Defendants make no claim that they do not

15  understand the proposed order or the products it aims to enjoin, or that Juicero's moving papers

16  did not accurately depict the Juisir.  Nevertheless, to the extent Defendants seek to avoid an

17  injunction on a technicality, an alternative proposed order is attached that removes reference to

18  Juicero's moving papers.

19                              **CONCLUSION**

20          For the foregoing reasons, Juicero respectfully requests that the Court grant its motion.

21  DATED:  June 23, 2017            QUINN EMANUEL URQUHART &
22                                   SULLIVAN, LLP

24                                   By */s/ Kevin P.B. Johnson*
25                                      Kevin P. B. Johnson
                                        Joseph Milowic III
                                        Brett Arnold
26                                      Margaret Shyr
                                        *Attorneys for Juicero Inc.*