# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| JUICERO, INC., <br>     Plaintiff, <br> v. <br> ITASTE CO., et al., <br>     Defendants. | Case No. 17-cv-01921-BLF <br><br> **ORDER DENYING JUICERO INC.'S MOTION FOR PRELIMINARY INJUNCTION** |

Plaintiff Juicero, Inc. ("Juicero") seeks a preliminary injunction to prevent Defendants iTaste Co. et al. (collectively, "iTaste") from making, using, offering to sell, or selling within the United States, or importing into the United States, the Juisir product or any product not more than colorably different due to the alleged infringement of claim 3 of U.S. Patent No. 9,493,298 (the "'298 patent"). For the reasons set forth below, the Court DENIES Juicero's motion.

## I. BACKGROUND

Juicero is a San Francisco-based company that was founded in 2013. Rosenthal Decl. ¶ 2, ECF 35-6. It employs 120 people. *Id*. ¶ 3. Until recently, Juicero manufactured and sold the Juicero Press, a high-end cold-press juicer which it touts as requiring zero post-juicing clean-up. Katz Decl. ¶ 3, ECF 35-7; *see also* Rosenthal Decl. ¶¶ 6, 8, ECF 35-6. Juicero eliminates the need for clean-up by pre-packaging the fruit and vegetables that will be juiced in sealed pouches called "Produce Packs." Katz Decl. ¶ 5, ECF 35-7. The Juicero Press only works with Juicero's proprietary Produce Packs, which customers must buy directly from Juicero. *See* Exs. 16, 17, 28 to Opp, ECF 45-17, -18, -29. They cannot fill their own pouches. *See id*.

Juicero owns the '298 patent, which is entitled "Juicing Systems and Methods." It issued to Doug Evans, Juicero's founder, and Paul Katz on November 15, 2016. It generally relates to

"[j]uicing methods and apparatuses for extracting juice from food matter using juicer cartridges." '298 patent, Abstract. Independent claim 3 recites:

> 3. A juicer comprising:
> a region configured to receive one or more compressible juicer cartridges including an outlet and food matter contained therein;
> a pressing element configured to apply pressure to the one or more juice cartridges, wherein the region and the pressing element are configured and arranged to dispense fluid extracted from the one or more juicer cartridges without the extracted fluid or the food matter directly contacting the region or pressing element; and
> a dispensing point associated with the region, wherein the dispensing point is configured and arranged to receive the outlet of each juicer cartridge of the one or more juicer cartridges, wherein the region and pressing element are constructed so that the outlet of each juicer cartridge of the one or more juicer cartridges extends beyond the region and pressing element.

*Id.*, col. 33 l. 44-col. 34 l. 9.

Defendant iTaste Co., Ltd. ("iTaste") is a Chinese company based in Shanghai. *See* Ex. 1 to Mot. at 1, ECF 35-9. Defendant Froothie USA ("Froothie") is iTaste's exclusive distributor in the United States. Nawfal Decl. ¶ 2, ECF 44-7. Roughly in fall 2017, Defendants expect to sell the Juisir, a cold-press juicing machine which it also touts as requiring zero clean-up. *Id.* ¶ 3; Ex. 24 to Mot. at 2, ECF 35-32. It effects this by using reusable food-grade juicing bags, which users fill themselves with their own fruit and vegetables. *Id.*

Juicero initiated this lawsuit on April 6, 2017, alleging patent, trademark, and trade dress infringement, as well as unfair competition. ECF 1. It amended its complaint on April 14 to add additional aliases for iTaste. ECF 19. Roughly one month later, on May 19, 2017, Juicero brought the instant motion for a preliminary injunction, based only on its patent claim. ECF 35.

## II. LEGAL STANDARD

"A preliminary injunction is a 'drastic and extraordinary remedy that is not to be routinely granted.'" *National Steel Car, Ltd. v. Canadian P. Ry., Ltd.*, 357 F.3d 1319, 1324 (Fed. Cir. 2004) (quoting *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993)). It "is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). As such, the basic function of a preliminary injunction is "to preserve the relative positions of the parties until a trial on the merits can be

held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

A party seeking a preliminary injunction must show: "(1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm if the injunction is not granted; (3) the balance of hardships weighs in its favor; and (4) an injunction is in the public interest." *Apple v. Samsung*, 695 F.3d 1370, 1373-74 (Fed. Cir. 2012) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The plaintiff bears the burden of making a clear showing on these elements and on entitlement to this extraordinary remedy. *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010). "These factors, taken individually, are not dispositive; rather, the district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested." *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 (Fed. Cir. 1988). The Federal Circuit, however, has placed particular emphasis on the first two factors: "a movant cannot be granted a preliminary injunction unless it establishes *both* of the first two factors, i.e., likelihood of success on the merits and irreparable harm." *Amazon.com*, 239 F.3d at 1350 (emphasis in original). Accordingly, "[w]hile granting a preliminary injunction requires analysis of all four factors, a trial court may . . . deny a motion based on a patentee's failure to show any one of the four factors—especially either of the first two—without analyzing the others." *Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1356 (Fed. Cir. 2002); *see also Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 953 (Fed. Cir. 1990) ("If the injunction is denied, the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial.").

### III. DISCUSSION

The Court looks to the four *Winter* factors to determine whether Juicero has met its moving burden. As discussed below, the Court finds that Juicero has failed to establish that it is likely to suffer irreparable harm, which alone can be a sufficient basis to deny its motion. *Jack Guttman*, 302 F.3d at 1356. However, even considering the other three factors and weighing all factors collectively, a preliminary injunction is not warranted here.

#### A. Irreparable Harm

A plaintiff seeking a preliminary injunction "must make a clear showing that it is at risk of

irreparable harm, which entails showing a likelihood of substantial and immediate irreparable injury." *Apple Inc.*, 695 F.3d at 1374. "[T]o satisfy the irreparable harm factor in a patent infringement suit, a patentee must establish both of the following requirements: (1) that absent an injunction, it will suffer irreparable harm, and (2) that a sufficiently strong causal nexus relates the alleged harm to the alleged infringement" *Id*. "To show irreparable harm, it is necessary to show that the infringement caused harm in the first place." *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012). Further, deciding whether a plaintiff would suffer irreparable harm absent an injunction involves an inquiry into whether money damages would adequately make the plaintiff whole. *See Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012) ("[T]he irreparable harm inquiry seeks to measure harms that no damages payment, however great, could address.").

Juicero has failed to make a clear showing that it is at risk of irreparable harm. In its original motion and at the August 24, 2017 hearing, Juicero advanced several theories: (1) loss of sales and market share, which Juicero argued was particularly strong because Defendants positioned themselves to directly compete with Juicero; (2) a diminished ability to fund research and development; and (3) reputational harm. Mot. 18-21; Hrg. Tr. 7:18-18:4, ECF 97. However, on August 31, 2017, the Juicero board of directors voted to suspend the sale and production of the Juicero Press and Produce Packs and to pursue acquisition by a third party to either (1) purchase the Juicero business as a whole and continue running it, or (2) purchase Juciero's intellectual property and hard assets. Rosenthal Decl. ¶ 3, ECF 98-1. The Court invited supplemental briefing to allow Juicero the opportunity to demonstrate continued irreparable harm in light of the changed circumstances. ECF 95. In its supplemental brief Juicero asserts that, even with its suspended operations, it will still suffer irreparable harm because it considers the '298 patent "one its most valuable pieces of property" and Defendants' continued infringement will diminish the value of the '298 patent to a prospective buyer. Supp Br. 2-5, ECF 98. Juicero also argues that, to the extent its purchaser wishes to practice the '298 patent through Juicero (rather than on its own), Juicero stands to suffer the same irreparable harm described in its original motion. *Id*.

Neither of Juicero's current theories of irreparable harm is persuasive. Taking them in

reverse order, Juicero's second theory that, if a potential purchaser wished to practice the '298 patent through Juicero, it would suffer irreparable harm is pure speculation. Juicero offers no evidence that there are prospective buyers for the '298 patent, much less that these buyers wish to practice the '298 patent through Juicero. As such, it does not qualify as "immediate irreparable injury." *Apple Inc.*, 695 F.3d at 1374.

This only leaves Juicero's first theory: that it will be irreparably harmed because Defendants' alleged infringement will diminish the value of the '298 patent. This theory fails for several reasons. First, it too is speculative. Juicero offers no evidence that there are prospective buyers for the '298 patent, or that these buyers place value on whether the '298 patent serves as the basis for a preliminary injunction against Defendants. Instead, it bases this argument on attorney argument and vague assertions from its CFO. *See generally* Supp. Br., ECF 98; Rosenthal Decl., ECF 98-1. Thus, it is not "immediate irreparable injury." *Apple Inc.*, 695 F.3d at 1374.

Second, even if the Court were to look past the speculative nature of this argument, Juicero fails to show that is harm is "*likely* in the absence of an injunction." *Winter*, 555 U.S. at 21-22. As the Supreme Court has explained, a moving party must show that injury is *likely*; "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with [its] characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. Here, Juicero's assertion that the value of the '298 patent stands to be diminished is, at best, mere possibility. As discussed above, Juicero offers no evidence of prospective buyers or their valuation preferences. In the absence of such concrete evidence, Juicero also does not attempt a less specific task of, for example, explaining why a preliminary injunction would be valuable for the technology area of the '298 patent or the market for juicers like the Juicero Press or Juisir. In short, Juicero provides the Court with no basis upon which it could find that a diminishing of the value of the '298 patent is likely.

Indeed, if anything, it actually seems *unlikely* that the denial of a preliminary injunction here would diminish the value of the '298 patent. Even if Defendants were not prevented from selling the Juisir through a preliminary injunction, this litigation would continue and, if successful,

5

there is nothing that would prevent a future purchaser of the '298 patent from receiving infringement damages or seeking a permanent injunction. There is also nothing that would prevent a future purchaser of the '298 patent from asserting that patent against other potential infringers. As such, the '298 patent will retain its power as an instrument of exclusivity regardless of whether or not this Court issues a preliminary injunction. Thus, it seems unlikely in this case that Defendants' alleged infringement diminishes its value.

Finally, even if the Court were to accept Juicero's theory that Defendants' alleged infringement is likely to decrease in value of the '298 patent, Juicero has failed to show that it would not be possible for money damages to make it whole. *See Celsis in Vitro*, 664 F.3d at 930 ("[T]he irreparable harm inquiry seeks to measure harms that no damages payment, however great, could address."). Instead, here, it actually appears that money damages will be a sufficient remedy. This is especially true in light of the fact that Juicero is off the market and up for sale—valuation will be developed for sale and can form the basis of a future recovery. Thus, even if Juicero were to suffer a reduction in the value of its '298 patent, money damages can provide redress. Accordingly, for all of these reasons, Juicero has failed to make a clear showing that it is at risk of irreparable harm.

Juicero's arguments to the contrary are not persuasive. Juicero's primary support for its position is that another district court cited a similar patent valuation-based theory of irreparable harm. Supp Br. 2-5, ECF 98. In *Joyal Prod., Inc. v. Johnson Elec. N. Am., Inc.*, a District of New Jersey court awarded a *permanent* injunction to a patentee because, even though it had ceased manufacturing operations, "allowing [the defendant] to continue to import and sell infringing products in the United States would irreparably harm [the patentee's] ability to sell [its patent]." No. CIV. A. 04-5172 JAP, 2009 WL 512156, at *11 (D.N.J. Feb. 27, 2009), *aff'd*, 335 F. App'x 48 (Fed. Cir. 2009). This case is different. Rather than a permanent injunction, this case involves a preliminary injunction, the purpose of which is simply "to preserve the status quo and to protect the respective rights of the parties pending a determination on the merits." *Cordis Corp. v. Medtronic, Inc.*, 780 F.2d 991, 994 (Fed. Cir. 1985). In the specific context of a preliminary injunction, the Federal Circuit has made clear that "[a]pplication of a concept that every patentee

6

is always irreparably harmed by an alleged infringer's pretrial sales would . . . disserve the patent system." *Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990). Juicero's theory commits precisely this fallacy, as any patentee in any case could make the argument that pretrial infringement diminishes the value of its patent. Thus, *Joyal* does not compel issuing a preliminary injunction on the facts here.

In sum, Juicero's arguments that it will suffer irreparable harm are speculative at best and unpersuasive at worst. Either way, this is not enough to justify the extraordinary relief of a preliminary injunction. Thus, the Court finds that Juicero has failed to meet its burden of making a "clear showing" that it stands to suffer "substantial and immediate irreparable injury." *Apple Inc.*, 695 F.3d at 1374. Because Juicero has not met this burden, the Court need not address whether it has satisfied the additional requirement that there be a causal nexus between the infringement and the alleged harm.

### B. Remaining Factors

Juicero's failure to show irreparable harm is alone sufficient to permit the Court to, in its discretion, deny Juicero's motion for a preliminary injunction. *Jack Guttman,* 302 F.3d at 1356 ("a trial court may . . . deny a motion based on a patentee's failure to show any one of the four factors—especially either of the first two—without analyzing the others"); *see, e.g.*, *Chestnut Hill Sound Inc. v. Apple Inc.*, No. 15-261-RGA, 2015 WL 6870037, at *2 (D. Del. Nov. 6, 2015) (denying a motion for a preliminary injunction without reaching the merits because moving party failed to establish irreparable harm); *Standard Innovation Corp. v. Lelo (Shanghai) Trading Co.*, No. 15-CV-04858-BLF, 2015 WL 6828317, at *4 (N.D. Cal. Nov. 6, 2015) (in the context of a temporary retraining order, same). Nevertheless, to facilitate review, the Court will assess the remaining *Winter* factors. Even considering these factors and weighing all four *Winter* factors collectively, a preliminary injunction is not warranted here.

#### i. Likelihood of Success on the Merits
##### a. Infringement

To prevail on infringement, Juicero must show that the Juisir "meets every claim limitation either literally or under the doctrine of equivalents." *Pfizer, Inc. v. Teva Pharm., USA, Inc.,* 429

7

F.3d 1364, 1376 (Fed. Cir. 2005). Juicero argues that, construing each of the terms in the patent according to their plain and ordinary meaning, the Juisir infringes claim 3. Mot. 12-16. Defendants, on the other hand, argue that the Juisir does not infringe because it does not include a "juicer cartridge" or "dispensing point . . . ," if these terms are correctly construed. Opp. 16-18.

**1. Claim Construction**

Before turning to questions of infringement, the Court addresses the parties' competing claim construction positions. The Court assesses these positions only for the purpose of deciding this motion; its conclusions are neither preliminary nor final constructions of these terms.

Here, the parties disagree as to the proper construction of two terms: "juicer cartridge" and "dispensing point . . . configured and arranged to receive the outlet of each juicer cartridge." *Compare* Mot. 12-16, *with* Opp. 16-18. Beginning with "juicer cartridge," Defendants contend that this term should be construed to mean a "sealed, rigid yet compressible container enclosing food matter and possessing an outlet from which juice may be expressed when the cartridge is compressed." Opp. 17-18. Juicero, on the other hand, argues that this term should be given its plain and ordinary meaning. Mot. 12. Assessing these competing positions, the Court finds Defendants' position too narrow. The specification discloses a number of embodiments of the "juicer cartridge," not all of which are "sealed" and/or "rigid." *See, e.g.*, '298 patent, col. 22 ll. 10-11 ("a reusable cartridge may be compressible instead of rigid"); *id*., col. 7 ll. 59-63 (describing how "[i]n some instances" and "in some embodiments, an outlet of a juicer cartridge may be sealed . . ."). "[A] claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct." *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1138 (Fed. Cir. 2004). Thus, the Court rejects Defendants' proposed construction and instead gives "juicer cartridge" its plain and ordinary meaning. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) ("[T]he words of a claim are generally given their ordinary and customary meaning.") (internal quotations omitted).

Turning to "dispensing point . . . configured and arranged to receive the outlet of each juicer cartridge," Defendants argue that this term "requires a housing nook or opening closely tailored to the shape of and in direct contact with the cartridge and its outlet." Opp. 18. Juicero,

8

on the other hand, advocates for plain and ordinary meaning. Mot. 12. In addition, at the hearing, the parties presented an additional dispute: whether "receive" required the "outlet" of the "juicer cartridge" to extend beyond the "dispensing point," as opposed to extending only beyond the "region" and the "pressing element" but not beyond the "dispensing point." ECF 93, 94, 96. Juicero argued for the former, while Defendants argued for the latter. *Id*. As to the first dispute, Defendants are incorrect that "dispensing point" requires the housing nook or opening they describe. Defendants' only support for their position are two figures, which the specification makes clear are "nonlimiting embodiments." '298 patent, col. 12 ll. 54-55. There is no reason the claims should be restricted to only these embodiments. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004) ("[I]t is improper to read a limitation from the specification into the claims."). As to the second dispute, however, Defendants are correct that "receive" does not require that the "outlet" extend beyond the "dispensing point." The claim language requires the "dispensing point" to "receive" the "outlet," but it does not place any structural limitations on the shape or length of the "outlet." *See* '298 patent, col. 33 l. 44-col. 34 l. 9. Moreover, if anything, its explicit requirement that the "outlet . . . extends beyond the region and the pressing element" implies that the same is not required of the "dispensing point," as the applicants knew how to specify the relative positions of these components, could have done so with respect to "outlet" and "dispensing point," and chose not to. Thus, the Court rejects Defendants' proposed construction and Juicero's narrower view of "receiving" and instead gives "dispensing point . . . configured and arranged to receive the outlet of each juicer cartridge" its plain and ordinary meaning. *See Phillips*, 415 F.3d at 1312 ("[T]he words of a claim are generally given their ordinary and customary meaning.") (internal quotations omitted).

### 2. Infringement

Having addressed the parties' claim construction disputes, the Court turns to infringement. After considering the evidence, the Court finds that there is a high likelihood that Juicero will prevail in showing that the Juisir infringes claim 3. As mentioned above, claim 3 recites a "juicer" comprising three main elements: (1) a "region . . . to receive . . . compressible juicer cartridges . . . ," (2) a "pressing element," and (3) a "dispensing point." There is a high likelihood that Juicero

9

will be able to show that the Juisir satisfies each of these limitations. First, the Juisir appears to contain a "region" that "receive[s] one or more compressible juicer cartridges:" the slot at the top of the Juisir which receives its compressible "J-Packs." *See* Ex. 19 to Mot. at 6, ECF 35-27; Ex. 20 to Mot. at 6, ECF 35-28; Answer ¶¶ 15, 17, ECF 28. The "J-Packs" appear to include an "outlet" (the elephant's nose) and "food matter contained therein" (the fruits and vegetables added by the user). *Id*. Second, the Juisir seems to contain a "pressing element," and that "pressing element" and the "region" are "configured and arranged to dispense fluid . . . without the extracted fluid or the food matter directly contacting the region or pressing element." For example, Defendants tout the Juisir as exerting "about 8 tonnes of force" and "work[ing] with our uniquely designed juicing bags" so that "JUISIR itself never needs to be cleaned." Ex. 19 to Mot. at 8, ECF 35-27; Ex. 20 to Mot. at 8, ECF 35-28; *see also* Answer ¶ 17, ECF 28. Third, the Juisir appears to have a "dispensing point"—the opening that allows the elephant's trunk to poke through. *See* Ex. 19 to Mot. at 6, ECF 35-27; Ex. 20 to Mot. at 6, ECF 35-28; Answer ¶ 17, ECF 28. This "dispensing point" is "associated with the region" (the slot at the top of the Juisir) because it is positioned at the end of the slot. *See* Answer ¶ 22, ECF 28. It is also "configured and arranged to receive the outlet of each juicer cartridge" because the elephant's trunk (the "outlet of each juicer cartridge") hangs down through the opening. *See* Answer ¶ 17, ECF 28. For this same reason, it is also the case that the "outlet of each juicer cartridge" (the elephant's trunk) extends beyond the "region" and the "pressing element." *See* Answer ¶¶ 17, 22, ECF 28. Thus, it seems likely that Juicero will prevail in proving infringement.

Defendants' noninfringement arguments do not alter this conclusion. Defendants argue that the Juisir does not infringe because it does not include a "juicer cartridge" or "dispensing point . . . ." Opp. 16-18. However, both arguments are based on overly narrow claim construction positions which the Court does not find persuasive. Accordingly, these arguments fail.

### b. Validity

Defendants argue that claim 3 of the '298 patent is invalid. At trial, Defendants will bear the burden of overcoming the statutory presumption of validity with clear and convincing evidence. At this stage, however, the Court need "not resolve the validity question, but rather

10

must . . . make an assessment of the persuasiveness of [Defendants' evidence]" recognizing that further evidence favoring either side may be presented at trial. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009). The Federal Circuit directs the Court to "first weigh the evidence both for and against validity" as available at the preliminary injunction stage, then to assess whether there is a "substantial question" concerning the validity of the patent, "meaning that the alleged infringer has presented an invalidity defense that the patentee has not shown lacks substantial merit . . . ." *Id*. at 1379.

Defendants' primary invalidity theory is that the '298 patent is obvious over U.S. Patent No. 5,277,810 to Shepard ("Shepard") in view of U.S. Provisional Application No. 61/814,015 to Wettlaufer et al. ("Wettlaufer"). Opp. 19-22. Defendants have failed to show that this raises a substantial question of validity. First, Defendants have only briefed how this combination discloses one element ("wherein the region and the pressing element are constructed . . .") of claim 3. *See* Opp. 20-21. They rely on the examiner's conclusions for the remainder, which are not necessarily binding on the Court. *See Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1322 (Fed. Cir. 2005) ("[A] court is not bound by the PTO's actions and must make its own independent determination of patent validity."). Second, even if the references did disclose every element, Defendants have not provided any evidence that "one of skill in the art would have combined these particular references to produce the claimed invention." *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1367 (Fed. Cir. 2017) (affirming district court finding of no substantial question of invalidity where the moving party provided "no explanation or reasoning for concluding that one of skill in the art would have combined these particular references to produce the claimed invention"). Obviousness requires such a showing; merely showing that certain elements are disclosed in certain references is not enough. *Id*. ("The district court correctly acknowledged that it is not enough for Toro to merely demonstrate that elements of the claimed invention were independently known in the prior art."). Finally, the Court's view of validity is bolstered by the fact that at least Shepard was considered by the examiner during prosecution. Ex. 37 to Opp. at 4, ECF 45-38. In such cases where the challenger relies on art that the examiner already considered, the presumption of validity is the strongest. *See Microsoft Corp. v. i4i Ltd.*

11

1  *P'ship*, 546 U.S. 91, 111 (2011).

2      Defendants have also failed to show that the other combinations of references cited in their brief raise a substantial question of validity. As with Shepard and Wettlaufer, Defendants provide no evidence for any of these combinations that a person of ordinary skill in the art would have been motivated to combine these references. *Metalcraft of Mayville*, 848 F.3d at 1367 ("[I]t is not enough . . . to merely demonstrate that elements of the claimed invention were independently known in the prior art."). Further, as Juicero correctly points out, at least some material aspects of these other references are cumulative of prior art that was already considered by the PTO. For example, like Sheppard, U.S. Patent No. 4,442,767 ("Johnson") discloses a press that contacts fruit. *Compare* Johnson, 5:4-24 *with* Sheppard, 8:28-37. Similarly, European Patent No. 2 057 922 B1 ("Huber") and WO Patent No. 03094680 ("Rasmussen") disclose flexible, compressible containers for fruit. *See* Huber, Abstract, ¶ 9; Rasmussen, 1:3-6. Prior art references considered by the examiner, such as U.S. Patent Nos. 1,676,102, 2,688,914, 3,159,096, and 3,334,790, also disclosed compressible containers. Accordingly, on balance, Defendants have failed to show that there is a "substantial question" regarding the validity of the '298 patent.

    In sum, because Juicero is likely to succeed in showing that the '298 patent is infringed and Defendants are unlikely to succeed in its affirmative defenses or showing the '298 patent is invalid, Juicero's likelihood of success is high.

### ii. Balance of Hardships

    The balance of hardships weighs against granting a preliminary injunction. Juicero has suspended operations and no longer seeks to sell the Juicero Press or its Produce Packs. Thus, at most, the only hardship that Juicero stands to suffer is an alleged reduction in the value of the '298 patent. As discussed above, this harm is speculative, and, if anything, unlikely.

    By contrast, Defendants have moved forward with plans to bring the Juisir to market. According to iTaste, ███████████████████████████████████████ ███████████████████████████ Liu Decl. ¶ 11, ECF 55-7. An injunction would cause ███ ████████████████████████████████████████████ *Id*. According to Froothie, an injunction would cause ██████████████████████████████████████████ Nawfal Decl. ¶ 7,

ECF 44-7. This is not only because Froothie would be prevented from selling the Juisir, but also because ████████████████████████████████████████████████████████ *Id.* ████████████████████████████████████████████████████████ *Id.* Taken together, Defendants stand to suffer substantial hardship if the Court were to issue a preliminary injunction. Thus, the balance of hardships weighs against this result.

          **iii.    Public Interest**

The public interest factor does not affect the outcome in this case. While it is true that "[t]he public is best served by enforcing patents that are likely valid and infringed," *Abbott Labs v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006), this principle is not without limit. The Federal Circuit has directed that a "district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested." *Hybritech*, 849 F.2d at 1451. If the public interest in protecting patent rights were a sufficient basis for granting an injunction, "then a patentee would be entitled to an injunction any time a patent is found to be valid and infringed." *Presidio Components Inc. v. Am. Tech. Ceramics Corp.*, 723 F. Supp. 2d 1284, 1339 (S.D. Cal. 2010), *aff'd in part, vacated in part*, 702 F.3d 1351 (Fed. Cir. 2012). This cannot be correct. Further, it seems likely that granting an injunction here could work a small disservice to the public because it would deprive the public of what may be its only option for cold-press, no mess juicing: the Juisir. While it is possible that other companies do or will offer this kind of juicer (or something comparable), it would hurt the public to restrict its choice in solutions. Accordingly, this weakens the relative strength of the public interest in protecting patent rights in this case.

**IV.    CONCLUSION**

Accordingly, Juicero has failed to show that it stands to suffer irreparable harm, which alone is sufficient to deny its motion. Nevertheless, even proceeding to assess the remaining *Winter* factors, a preliminary injunction is not warranted. Although it appears that Juicero is likely to succeed in showing that the '298 patent is valid and infringed, it has not carried its burden in demonstrating that it is likely to suffer irreparable harm or that the balance of hardships weighs in

its favor.  For these reasons, the court DENIES Juicero's motion for a preliminary injunction.

**IT IS SO ORDERED.**

Dated: October 5, 2017

_____
BETH LABSON FREEMAN
United States District Judge